Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2736 | **DATE** | 11/16/2000 |
| **CASE TITLE** | Tracy vs. Jewel Food Stores et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 12/6/2000 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant in part and deny in part Defendant Kimberly Clark's motion (Doc 42-1) for summary judgment. The motion is granted as to the invalidity of claims 1, 9, 10 and 14 of the patent-in-suit. The motion is denied as to the invalidity of claim 15 and the infringement of claim 2 of the patent-in-suit.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 17 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 54 |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 NOV 16 PM 3:08 | | |
| | SCT courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RHONDA TRACY,<br><br>        Plaintiff,<br><br>vs.<br><br>JEWEL FOOD STORES, INC.,<br>AMERICAN STORES COMPANY,<br>WAL MART STORES, INC.,<br>DOMINICK'S FINER FOODS, INC.,<br>DRYPERS CORPORATION,<br>KIMBERLY-CLARK CORPORATION,<br>and TYCO INTERNATIONAL LTD.,<br><br>        Defendants. | 99 C 2736<br><br>DOCKETED<br>NOV 17 2000 |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

INTRODUCTION

Before the Court is Defendant Kimberly Clark Corporation's motion for summary judgment. For the following reasons, we grant the motion in part and deny it in part.

BACKGROUND

This lawsuit arises from a patent held by Plaintiff Rhonda Tracy ("Tracy"). As a new mother, Tracy developed an improvement to existing disposable diapers. (Pl.

Amd. Cplt. ¶ 11.) On September 8, 1987, she filed an application at the United States Patent & Trademark Office ("PTO") for various aspects of her invention. (Id.) She filed a second patent application on April 30, 1990. (Id. at ¶ 12.) The second application was prosecuted to allowance and matured as United States Letters Patent No. 5,064,421 which issued to Tracy on November 12, 1991. (Id.) That same day, Tracy filed a third patent application seeking broader patent protection than what was covered by her '421 patent. (Id. at ¶ 13.) Following a file wrapper continuation and a successful appeal to the PTO Board of Patent Appeals and Interferences, this application eventually matured into the patent-in-suit which issued on August 25, 1998. (Id.)

On April 19, 2000, Tracy filed an amended complaint against Defendants Jewel Food Stores, Inc., American Stores Company, Wal Mart Stores, Inc., Dominick's Finer Foods, Inc., Drypers Corporation, Kimberly-Clark Corporation, and Confab Holding Corporation. The amended complaint asserted numerous infringement claims against various Defendants. Count VI of the amended complaint alleges that Defendant Kimberly-Clark Corporation ("Kimberly-Clark") infringed the patent-in-suit by "selling and offering to sell diapers within the scope thereof, and by inducing others to infringe the patent." (Id. at ¶ 44.)

Kimberly-Clark now moves for summary judgment against Tracy because Tracy's patent claims are invalid (Claims 1, 9, 10, 14 and 15) or are not infringed by Kimberly-Clark (Claim 2.)

LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex Corp., 477 U.S. at 325, 106 S.Ct. at 2554. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record--only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991).

Ruling on a summary judgment motion will necessarily implicate the substantive evidentiary standard of proof that would apply at a trial on the merits. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In the case at bar, Kimberly-Clark has asserted that five claims in Tracy's patent are invalid for anticipation. Since patents enjoy a presumption of validity, Kimberly-Clark must establish its case for invalidity by clear and convincing evidence. See United States Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1563 (Fed. Cir. 1997).

DISCUSSION

Tracy contends that Kimberly-Clark has made and sold disposable diapers that infringe six claims of the patent-in-suit. Kimberly-Clark responds in its instant motion at five of those claims (1, 9, 10, 14 and 15) are invalid because they cover a prior art LUVS diaper (the "1986 LUVS diaper") sold by the Procter & Gamble Company

("Procter & Gamble") more than one year before Tracy filed her first patent application. In addition, Kimberly-Clark maintains that claim 2 of Tracy's patent is not infringed because the Kimberly-Clark diaper does not have a strip of padding along the waistband that provides "an additional absorbent barrier against leakage" as required by Claim 2. We shall treat the invalidity and infringement arguments in turn.

1. Whether Claims 1, 9, 10, 14 & 15 Of The Patent-In-Suit Are Valid

A patent claim is invalid if it is anticipated. See Celeritas Tech. Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1361 (Fed. Cir. 1998), cert denied, 525 U.S. 1106 (1999). A patent claim is anticipated if each and every element of the claim is embodied in a single prior art product. See id.

The parties agree that the 1986 LUVS diaper was prior art. In addition, the parties do not dispute that many of the elements of claims 1, 9, 10, 14 and 15 (the "five claims") are present in the 1986 LUVS diaper. At her deposition, Tracy identified two elements in the five claims that were not present in the 1986 LUVS diaper: (1) the 1986 LUVS diaper did not contain a "soft padding member," as required by claims 1, 9, 10 and 14; and (2) the 1986 LUVS diaper did not have "at least one strip of material forming a soft surface" in contact with the skin of the wearer "at at least one of the border edges" as required by claim 15.

a. "Soft Padding Member" Requirement (Claims 1, 9, 10 & 14)

Kimberly-Clark argues that the 1986 LUVS diaper contained a "soft padding member." In support of this contention, Kimberly-Clark points to Tracy's deposition testimony. At Tracy's May 2000 deposition, Kimberly-Clark presented Tracy with a 1986 LUVS diaper and asked her whether the diaper had a soft padding member. (Def. Exh. G, Tracy Dep., at 48.) Tracy testified that the diaper appeared to have a soft padding member. (Id.) The questioning attorney pressed her, asking "Is there any doubt in your mind that this diaper has the sort of soft padding member that you invented?" (Id. at 49.) Tracy responded "I think it does." (Id.) Tracy later made substantive changes to other answers given at her deposition, but she did not make any changes to these answers. (Def. Exh. H, Tracy Dep. Errata Sheet, at 2.)

Subsequently, in her sworn amended responses to Kimberly Clark's second set of interrogatories, Tracy maintained that the LUVS diaper did not include a soft padding member. (Def. Exh. D, Tracy Resp. to Second Interrogs., at ¶ 3.) Instead, Tracy explained, that member "is a heat-shrinkable, elastomeric plastic strip which is used in the waistband to provide a gathering effect and allow the waistband to stretch. It is not placed there as a cushion member." (Id.)

Kimberly-Clark points to the inconsistencies in these answers and asks us to disregard Tracy's answers to the written interrogatories. It is a well-settled rule in this

Circuit that a plaintiff cannot create an issue of material fact merely by manufacturing a conflict in his or her own testimony by submitting an affidavit that contradicts an earlier deposition. See Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532 (7th Cir. 1999). Thus, when a conflict arises between a plaintiff's sworn deposition and sworn affidavit, the deposition testimony generally overrides the affidavit statements. See id. Most affidavits are, after all, drafted by the lawyers rather than by the affiants. See Russell v. Acme-Evans Co., 51 F.3d 64, 67 (7th Cir. 1995). Only where the statement in the deposition appears to have been mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory in the surrounding circumstances generates a plausible explanation for the discrepancy, does the contradictory affidavit merit attention. See id.

At issue in the case at bar are Tracy's amended answers to Kimberly-Clark's second set of interrogatories. Like affidavits, answers to interrogatories tend to be drafted by attorneys. We believe that the aforementioned rules apply with equal force to answers to written interrogatories.

Applying these principles to the instant issue, we must conclude that Tracy has presented no genuine issue of material fact with respect to the soft padding member of the 1986 LUVS diaper. She stated unequivocally at her deposition that the diaper does contain a soft padding member. Then subsequently, in her amended responses to

Kimberly-Clark's second written interrogatories, Tracy claimed that the diaper does not contain a soft padding member. Tracy has offered no explanation as to the discrepancy between her answers, however. We do note that Tracy states in her affidavit that at the time of her deposition she was under stress due to her father's impending death. (Pl. Exh. B, Tracy Aff., at ¶ 4.) While this fact is unfortunate, it does not sufficiently explain the inconsistencies. Tracy has not suggested that she suffered a lapse in memory or judgment or that the question was phrased in a confusing manner, see Russell, 51 F.3d at 67, and we can discern nothing from the deposition transcript that would suggest so. Accordingly, we shall disregard her declarations regarding the nonexistence of a soft padding member.

Tracy has attempted to circumnavigate this inconsistency and raise a genuine issue of material fact by proffering the deposition testimony of Steven W. Miller, Vice President & General Counsel - Patents for Procter & Gamble. In his deposition, Miller testified that the 1986 LUVS diaper contains an elastomeric strip placed between the top sheet and the back sheet. (Pl. Exh. 2, Miller Dep., at 26.) When asked whether Procter & Gamble included any components in the diaper intended to provide padding in the waistband, Miller replied:

> A: Depends on what you mean by 'padding."
> Q: Well, if I use the word 'cushion,' would that facilitate your understanding of the question?
> A: Not a whole lot, but I could say that the top sheet certainly would provide that and you wouldn't want the elastomeric film to be directly against the skin. So that top sheet is providing a cushion function against the skin.
> Q: And what – why would you not want the elastomeric film to touch the skin?
> A: It's a – a plastic and if you've ever put plastic directly against skin, it's hot, and just found usually to be adverse to the environment the baby is in, it could cause red marking or skin irritation if you put plastic directly against the skin.

(Id. at 31.) Tracy offers this testimony as evidence that the elastomeric film constitutes a soft padding member of the 1986 LUVS diaper. We do not believe the testimony establishes this, however. That the elastomeric strip does not belong next to the baby's skin does not necessarily mean that the elastomeric strip is not a soft padding member. Nor does the fact that the top sheet performs a cushioning function mean that the elastomeric strip is not a soft padding member. In short, Miller never spoke to the issue of whether the elastomeric strip could serve as a soft padding member. Thus, contrary to Tracy's contentions, his testimony does not furnish a genuine issue of material fact as to whether the elastomeric strip comprises a soft padding member. Consequently, given the absence of a factual dispute, we conclude that claims 1, 9, 10 and 14 are invalid for anticipation and we grant Kimberly-Clark's motion as to these claims.

### b. Claim 15's Additional Requirement

Claim 15 contains an additional element requiring that the "padding member extend[] along an opposite edge portion at an exposed surface of the waist band." (Pl. Exh. 1, Patent-in-Suit, at 4.) Furthermore, the padding member must "includ[e] at least one strip of material formed from a soft substance." (Id.) The "strip of material" must form "a soft surface for contact with the skin of the individual at at least one of the border edges." (Id.)

At her deposition, the opposing attorney questioned Tracy about how the 1986 LUVS diaper measured up to the elements of Claim 15:

> Q. Does the padding member extend along an exposed surface of the waistband?
> A. Yes.
> Q. Can you explain for us why that is?
> A. Well, here's your exposed surface, and it extends inside of that exposed surface, right up here to the edge.
> Q. So the exposed surface is the very top of the waistband?
> A. Well, yes. The exposed area, of course, comes all the way up to the edge, as well as the inside padding member does.
> Q. In this diaper does the padding member form a soft surface for contact with the skin of the individual at at least one of the border edges?
> A. Yes.

(Def. Exh. G, Tracy Dep., at 51.)

In her subsequent affidavit, Tracy now states that the strip in the 1986 LUVS diaper "is not the padding member required by claim 15 for at least the reason that it

is not located at an 'exposed surface.' Instead, it is contained between the top sheet and the back sheet" of the diaper." (Pl. Exh. B, Tracy Aff., at ¶ 15.) She says she understood the "'exposed surface' of claim 15 to mean a broad surface of the waistband and not simply an edge of the diaper." (Id. at ¶ 16.) Tracy concludes that the "broad surface area of the strip in the [1986 LUVS diaper] does not touch the skin of the wearer." (Id.)

In support of this latter position, Tracy points to Miller's deposition. Here, unlike the previous instance described in part 1a of this opinion, we find Miller's testimony to be of import to the instant issue. Miller states unequivocally that the soft padding member (the elastomeric strip) does not touch the baby's skin. (Pl. Exh. 2, Miller Dep., at 30.) Because the elastomeric strip is made of plastic, Miller explains, it "could cause red marking or skin irritation if you put plastic directly against the skin." (Id. at 31.) Accordingly, the designers of the 1986 LUVS intended that the elastomeric strip not make contact with the wearer's skin.

Miller's testimony presents a genuine issue of material fact as to whether the padding member forms a soft surface for contact with the wearer's skin as claim 15

requires. Accordingly, we must deny Kimberly-Clark's motion for summary judgment with respect to the alleged invalidity of claim 15.[1]

2. Whether Claim 2 Of The Patent-In-Issue Was Infringed

Tracy has accused two Kimberly-Clark diaper products of infringing claim 2 of the patent-in-suit. Kimberly-Clark stopped making the first diaper product before the patent-in-suit issued. (Def. Exh. I, Williams Aff., at ¶ 3.) Nonetheless, Tracy seeks to hold Kimberly-Clark liable for inducement of infringement and contributory infringement under 35 U.S.C. § 271 because Kimberly-Clark allegedly continued to sell the diapers at retail after the date of issue of her patent. (Pl. Brief at 10 n.7.) However, Tracy has failed to produce any facts indicating that the allegedly infringing diaper remained in stores after the date her patent issued. In her brief, Tracy claims to have purchased in retail stores some of the allegedly infringing diapers subsequent to the date her patent issued. This unsubstantiated allegation is not enough to withstand summary judgment, however. See Celotex, 477 U.S. at 325 (stating that non-moving party cannot simply rest on pleadings but instead must set forth specific facts showing that a genuine issue exists for trial). Accordingly, her claim against Kimberly-Clark's prior line of disposable diapers cannot survive.

---

[1] The parties briefed only the issue of the validity of claim 15, not its infringement. Consequently, we do not address the issue of infringement here.

With respect to Kimberly-Clark's current disposable diaper (the "accused diaper"), the issue is whether the accused diaper contains the features of claim 2 of Tracy's patent. Claim 2 describes

> The diaper according to claim 1 wherein said padding member comprises a first strip of soft padding parallel to the waistband, the first strip providing an additional absorbent barrier against leakage.

(Pl. Exh. 1, Patent-In-Suit, at 4.) The parties agree that if the accused diaper contains a strip that (1) creates a barrier against leakage and (2) is absorbent, it contains the features of claim 2 and infringes Tracy's patent.

Kimberly-Clark claims that the accused diaper's strip is not absorbent. In support of this contention, it has provided affidavits from Michael W. Veith ("Veith"), a scientist with Kimberly-Clark. Veith conducted a test on a light blue strip of material on the inside of the accused diaper's waistband. (Def. Exh. N, Veith Aff., at ¶ 2.) Veith stretched the strip flat then placed a drop of distilled water onto it. (Id. at ¶ 4.) When the water touched the strip, it beaded on the surface. (Id. at ¶ 5.) After ninety seconds, the drop remained beaded and the strip had absorbed none of the material. (Id. at ¶ 6.) Veith concluded from the test that the material was not absorbant. (Id. at ¶ 3.)

Tracy conducted her own test and determined that the accused diaper's strip was absorbent. (Pl. Exh. B, Tracy Aff., at ¶ 34.) Tracy questions Veith's test, opining that

- 13 -

Veith may have tested the plastic side of the strip that faces away from the wearer's skin rather than the side that has the absorbent nonwoven material. (Id. at ¶ 35.) She also observes that even the most absorbent part of the accused diaper will initially cause water to bead upon it. (Id.) The beads tend to remain until the diaper is moved or some time passes. (Id.) Hence Tracy argues that water might very well bead up on the strip despite the fact that the strip is absorbent. (Id.)

In response, Kimberly-Clark furnished a second affidavit from Veith. Veith clarified that he had conducted his test on the proper side of the strip. (Supp. Veith Aff. at ¶ 3.) He claimed further that Tracy had adulterated her test by removing an absorbent part of the padding member and leaving only a non-absorbent component. (Id. at ¶ 4.) According to Veith, the strip is made by gluing a layer of nonwoven material to a layer of polyethylene film. (Id.) Separating the two layers can produce holes and disrupt the dried adhesive, both of which affect absorption. (Id.)

As the foregoing accounts illustrate, factual questions continue to surround the issue of absorbency. The parties disagree as to key factual issues such as what comprises the strip in question, what components of the strip are properly included in the test, and the degree to which water beads suggest absorption. Accordingly, we must conclude that Tracy has presented credible evidence suggesting that accused

diaper is in fact absorbent. Thus, summary judgment for Kimberly-Clark is not warranted at this stage of the proceedings with respect to its contention that it has not infringed claim 2 of Tracy's patent.

## CONCLUSION

For the foregoing reasons, we grant in part and deny in part Defendant Kimberly Clark's motion for summary judgment. The motion is granted as to the invalidity of claims 1, 9, 10 and 14 of the patent-in-suit. The motion is denied as to the invalidity of claim 15 and the infringement of claim 2 of the patent-in-suit.

_____
Charles P. Kocoras
United States District Judge

Dated: November 16, 2000